IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SRECO-FLEXIBLE, INC., f/k/a Sewer Rodding Equipment Co., Inc.,<br><br>      Plaintiff,<br><br><br><br>      vs.<br><br><br>SEWER EQUIPMENT CO. OF AMERICA,<br><br><br><br><br><br>      Defendant. | MEMORANDUM DECISION AND CONTEMPT ORDER AND AWARD OF ATTORNEY FEES AND COSTS<br><br><br><br>Case No. 2:84-CV-814 TS |

This matter came before the court on Plaintiff SRECO-Flexible's (SRECO) Motion to have contempt proceedings against Defendant Sewer Equipment Company of America (Sewer Equipment) for violation of the Court's May 14, 1986 Permanent Injunction. The Court held evidentiary hearings on November 4, 2003, to determine whether Sewer Equipment violated the injunction, and on May 12, 2005, to determine the amount of

damages SRECO suffered due to Sewer Equipment's contempt. The Court issued rulings on the record at the close of each hearing and awarded damages and attorney fees and costs to Plaintiff SRECO.  This Order memorializes and embodies those bench rulings and rules on Defendant's Objection to Plaintiff's Proposed Order.

District Courts have broad discretion in using the contempt power.  *U.S. v. Riewe*, 676 F.2d 418, 421 (10th Cir. 1982).  In exercising this discretion, district courts may award damages to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. *O'Connor v. Midwest Pipe Fabrications. Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (citations omitted).

At the November 4, 2003 hearing, the Court found by clear and convincing evidence that Sewer Equipment admitted that it violated the Court's May 14, 1986 Permanent Injunction and held Sewer Equipment in contempt for these violations.

In trademark cases, courts look to trademark law and the Lanham Act to supply the appropriate remedy. *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990).  In such cases, a plaintiff whose trademark rights have been violated is entitled to recover a reasonable royalty or lost profits.  *Howard Johnson*, 892 F.2d at 1519; *Manhattan Industries, Inc.,  v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5-8 (2d Cir. 1989).

In the present case, the Court finds that a reasonable royalty is the best measure of damages because it compensates SRECO by granting it royalties Sewer Equipment would have paid for its wrongful acts—using the trademark SECA and trade dress of the blue colored sewer-cleaning rods.  *Howard Johnson*, 892 F.2d at 15 17-19 (awarding

reasonable royalty to trademark owner when trademark infringer violated an injunction preventing use of a particular trademark).

Based on the information and testimony presented at the May 12, 2005 hearing, the Court finds the appropriate measure of damages to be a two percent (2%) royalty applied to Sewer Equipment's gross revenue for the period during which it used the trademark SECA and/or sold or offered to sell blue-colored rods. The Court finds that the royalty should be applied to gross revenues, and not incremental revenues for several reasons. First, the testimony before the Court demonstrates that royalty agreements of this kind are paid on gross, not incremental sales. Second, the Court finds the testimony of SRECO's expert to be credible and persuasive. SRECO's expert opined that, because Sewer Equipment used the trademark SECA broadly and across its entire business, the royalty rate should (1) be calculated using gross revenues, and (2) applied to Sewer Equipment's gross revenues. The Court's view of this expert as a credible and persuasive witness is partly based on his extensive experience in the specific area of licensing and royalty agreements for intellectual property. Finally, the Court notes he testified that, to his knowledge, there are no agreements where the parties apply a royalty, which is derived from calculations using gross revenues, to incremental revenues to determine intellectual property damages.

The Court notes that Sewer Equipment's expert was an excellent witness but his testimony was not persuasive because he is not as experienced in intellectual property valuation as SRECO's expert, and because he based his analysis on misleading premises—namely, that this is not a trademark case and that Sewer Equipment's use of

the trademark SECA was of no real value to Sewer Equipment.  The evidence before the Court is to the contrary.  The information and testimony from the November 4, 2003 and May 12, 2005 hearings, and in particular the testimony of Mr. Schultz, reveals that Mr. Schultz and Sewer Equipment knew that Sewer Equipment had agreed not to use the SECA trademark or sell blue-colored rods.  Despite this knowledge of the agreement and its prohibitions, Sewer Equipment made a conscious decision to take a business risk by using the trademark SECA, and offering for sale, and selling, blue-colored rods.   Indeed, as admitted by Mr. Schultz, Sewer Equipment used the SECA trademark in many ways, including on its website and business cards.  Accordingly, use of the SECA trademark and being able to sell blue-colored rods was of significant value to Sewer Equipment.  This conclusion is bolstered by the fact that customers began requesting blue-colored rods, which indicates that Sewer Equipment's conscious and risky business decision was paying dividends.

    As for the gross revenues that are subject to the two percent (2%) royalty, the Court finds the damages period began with the appearance of Sewer Equipment's first ad in Cleaner magazine (an industry publication) that contained the trademark SECA.  This occurred some time before September 1, 2002.  The damages period ended on November 7, 2003, when Sewer Equipment sent letters to its vendors requesting that they no longer use the SECA trademark to refer to Sewer Equipment.  The Court finds that the closure of the damages period is appropriately set at November 7, 2003, because Sewer Equipment should be responsible, as the party that took the business risk in performing

4

acts that it knew were prohibited, for the consequences until it has taken all reasonable steps to discontinue the wrongful acts.

Pursuant to the Court's direction, Mr. Hoffman prepared a report applying the formula announced by the Court to the gross revenues during the applicable damages period. Sewer Equipment agrees that these figures are consistent with the Court's ruling. Based on the entire record in these contempt proceedings, the Court finds that the amount of damages in this case are $383,094.61.

Plaintiff seeks prejudgment interest on the damages. Sewer Equipment disputes that prejudgment interest should be awarded and also disputes the formula that SRECO used to calculate the prejudgment interest.

> [I]n the federal context, this Court has adopted a preference, if not a presumption, for prejudgment interest. *See FDIC v. UMIC, Inc.,* 136 F.3d 1375, 1388 (10th Cir. 1998) *cert. denied* 119 S.Ct. 404 (1998) ("prejudgment interest should normally be awarded on successful federal claims"); *Kleier Adver.,* 921 F.2d at 1041-42; *Touche Ross,* 854 F.2d at 1256 ("under federal law prejudgment interest is ordinarily awarded, absent some justification for withholding it").

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 -1237 (10th Cir. 2000).

In determining whether to award prejudgment interest on a federal claim, this Court must "focus on a two-step analysis: (1) whether an award of prejudgment interest would serve to compensate [the wronged party]; and (2) if so, whether equity precludes an award." *Id.,* at 1237 (citing *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d at 1042 n.4 (10th Cir. 1990)).

> Because there is no federal statutory interest rate on prejudgment interest, the rate imposed will be left to the trial Court's discretion. We note that [*Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431 (7th Cir. 1989)] while intending not to "straitjacket" district judges, approved of the trial court's allowing compound interest and suggested, for convenience, using the prime rate. *Id.* at 436–37. *Frank Music* suggested the fifty-two week Treasury bill rate, but left the final decision to the trial court because it was better able to weigh the equities involved with imposition of interest. 886 F.2d at 1552.

*Kleier Advertising*, 921 F.2d at 1042.

Federal Courts are "free to choose any interest rate which would 'fairly compensate the plaintiff for the delay in the receipt of payment,'" including the current state interest rate. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 764 (10th Cir. 1997) (quoting *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533 (10th Cir. 1987)); *see also Amoco Production Co. v. United States*, 663 F.Supp. 998, 1001-02 (D. Utah 1987) (applying the 52-week Treasury Bill rate then-prescribed by Congress for judgment interest in 28 U.S.C. § 1961).

SRECO seeks to use prime plus 2% as the prejudgment rate. Sewer Equipment contends that prejudgment interest should not be awarded, and if it is, that the federal post-judgment interest rate should be applied.

The Court finds that an award of prejudgment interest would serve to compensate, and is necessary to fully compensate, SRECO. As noted above, the Court has found that Sewer Equipment made a conscious and risky decision to violate the Court's order. Upon review of the entire record, the Court finds that equity does not preclude an award of prejudgment interest in these circumstances and that such award is justified. Upon

6

consideration of the parties' arguments and the case law, the Court finds that the prime

rate is the rate that would best serve to compensate SRECO for the contempt.

The Court next turns to the issue of the appropriate award of attorney fees and

costs.   The standard for determining the reasonable award of attorney fees is much

litigated:

> When determining what is a reasonable award of attorney fees, the district
> Court must calculate the "lodestar," which is the reasonable number of hours
> spent on the litigation multiplied by a reasonable hourly rate.  *See* [*Case v.
> Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998)].  The party
> requesting attorney fees bears the burden of proving the amount of hours
> spent on the case and the appropriate hourly rates.  *Id.*  In order to prove the
> number of hours reasonably spent on the litigation, the party must submit
> "meticulous, contemporaneous time records that reveal, for each lawyer for
> whom fees are sought, all hours for which compensation is requested and
> how those hours were allotted to specific tasks."  *Id.* at 1250.  The district
> court can reduce the number of hours when the time records provided to the
> Court are inadequate.  *Id.*  Finally, the district court must reduce the actual
> number of hours expended to a reasonable number to ensure services an
> attorney would not properly bill to his or her client are not billed to the
> adverse party.  *Id.*

*United Phosphorus,* 205 F.3d at 1233-1234 (10th Cir. 2000).

At the May 12, 2005 hearing, the Court found that an award of attorney fees and

costs is appropriate in this action.  In the Tenth Circuit, district courts have discretion to

award attorney fees, and in civil contempt cases no finding of willfulness is required as a

prerequisite to awarding attorney fees.  *John Zinc Co. v. Zink*, 241 F.3d 1256, 1261-62

(10th Cir. 2001).  In the present case, the Court directed SRECO's attorneys to prepare

an affidavit setting forth the basis for SRECO's fees and cost incurred for this action.

SRECO's attorneys submitted their affidavits and declaration supporting its request

for the $131,568.18 in attorney fees and $10,626.21 in costs for a total of $142,194.39 in

7

fees and costs sustained in bringing this contempt action.   The submissions include contemporaneous time records showing meticulous detail.

Sewer Equipment objects to the claimed amount of hours spent on the contempt proceedings.   Specifically, Sewer Equipment contends that SRECO's claim that the amount is excessive for the nature of this case, one firm assigned tasks to seven different attorneys over the course of the case, that SRECO changed law firms over the course of the case and included five time entries to review the status of a parallel case in Ohio. Significantly, Sewer Equipment does not object to the hourly rates of the attorneys and paralegals, to the time spent by support staff such as paralegals and project assistants, or to the amount of costs.

Sewer Equipment contends the hours spent were excessive.   In support of this argument it contends that the discovery was limited and did not include expert depositions, that the case was resolved after a one-day evidentiary hearing, and involved limited issues. However, that belies the course of the case.   Sewer Equipment filed a motion to compel, which it subsequently withdrew.  SRECO filed a motion to compel, upon which it prevailed after briefing and a hearing–events that contradict Sewer Equipment's position that it was fully cooperative in discovery.  The formula for damages was disputed.  Experts were hired and testified on the issue of damages–requiring extensive preparation even if the experts were not deposed.  The parties submitted pre-hearing briefs.  Based upon its familiarity with the case, the Court finds that the number of hours spent in discovery and expert-related tasks were not excessive and were reasonable.

Sewer Equipment also contends that the hours are excessive because one firm assigned tasks to seven different attorneys over the course of the case and SRECO changed law firms over the course of the case.  The Court find that Sewer Equipment has not shown that a reduction is  warranted on these grounds.  In the absence of a showing of excessive time spent, this Court will not micro-manage professional decisions on allocation of tasks amongst attorneys when reviewing requests for attorney fees.  The Court also finds that a reduction of hours is not warranted on the grounds of a change of counsel when that change resulted in eventual savings of hours due to the fact that the new local firm was not required to travel for the discovery and evidentiary hearings.  The hours expended for new counsel to consult with former counsel do not appear to be excessive.

Finally, Sewer Equipment contends that time was improperly included for matters outside this contempt proceeding.  It specifically objects to five time entries involving review of the status of a parallel case in Ohio.  The Court notes that Sewer Equipment's initial response to this contempt proceeding was that the issue of damages for its contempt was being pursued in the case in Ohio.  *See* Docket No. 25.  For this and other reasons, it is not unreasonable for counsel to have monitored the status of the Ohio case.

Having considered Sewer Equipment's Objections to the hours, the Court finds that the fees, while substantial, are not unreasonable under the circumstances of this case. The Court finds that SRECO has established that the fees and costs are reasonable.

Accordingly, it is therefore

9

ORDERED that Defendant Sewer Equipment Company of America is in contempt for its admitted violations of the Court's May 14, 1986 Permanent Injunction.  It is further

ORDERED that SRECO-Flexible, Inc. shall have judgment in the following amounts: damages of $383,094.61, together with prejudgment interest at the prime rate; plus reasonable attorney fees and costs incurred in pursuing this contempt in the amount of $142,194.39.

DATED  September 16, 2005.


BY THE COURT:

_____
TED STEWART
United States District Judge